IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

JOHN MARSHALL,

                               Petitioner,          :   Case No. 17 Civ 2951

      -against-

UNITED STATES OF AMERICA,

                           Respondent.

--------------------------------------------------------------- X

## PETITION AND MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR WRIT OF ERROR *CORAM NOBIS*

CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, NY  10005
Tel.:    212-732-3200
Email:  lewis@clm.com

*Attorneys for Petitioner*
*John Marshall*

*Of Counsel:*

 *Alan S. Lewis*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... ii

PRELIMINARY STATEMENT ............................................................. 1

STATEMENT OF FACTS ..................................................................... 2

ARGUMENT ........................................................................................ 5

    A.   Mr. Marshall Is Actually Innocent of the Crime to Which He Pled
          Guilty.  His Lawyer Rendered Ineffective Assistance in Failing to
          Identify and Raise the Fatal Flaw in the Government's Case – the
          Lack of Any Basis for Concluding that Mr. Marshall Received or
          Understood that He Would Receive a Benefit in Connection with
          His Tip. .....................................................................................6

    B.   Sound Reasons Exist for the Period of Time that Elapsed Between
          Mr. Marshall's Conviction and the Filing of this Action ............................ 13

    C.   Mr. Marshall's Erroneous Conviction Continues to Cause Him Harm ....... 15

    CONCLUSION ..................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bousley v. U.S.*,
  523 U.S. 614 (1998)..................................................................... 9, 10

*Dirks v. SEC*,
  463 U.S. 646 (1983)..................................................................... 6, 7, 14

*Fleming v. U.S.*,
  146 F.3d 88 (2d Cir. 1998).......................................................... 16

*Foont v. U.S.*,
  93 F.3d 76 (2d Cir. 1996)............................................................. 1,  5, 13

*Gushlak v. U.S.*,
  16-cv-2713 (NGG) (JO), 2017 WL 888301 (E.D.N.Y. Mar. 6, 2017).............. 14

*Hawkman v. Parratt*,
  661 F.2d 1161 (8th Cir. 1981) ..................................................... 10

*Hill v. Lockhart*,
  474 U.S. 52 (1985) ...................................................................... 12

*Kovacs v. U.S.*,
  744 F. 3d 44 (2d Cir. 2014)........................................................ *passim*

*Nicks v. U.S.*,
  955 F.2d 161 (2d Cir. 1992).........................................................5

*Salman v. U.S.*,
  137 S. Ct. 420............................................................................ *passim*

*Somerville v. Conway*,
  281 F. Supp. 2d 515 (E.D.N.Y. 2003) ......................................... 13

*Strickland v. Washington*,
  466 U.S. 668 (1984) ................................................................... 9, 12

*U.S. v. Newman*,
    773 F.3d 438 (2d Cir. 2014)........................................................................ *passim*

*U.S. v. Weeks*,
    653 F.3d 1188 (10th Cir. 2011) ...........................................................................9

*Weichert v. U.S.*,
    458 F. Supp.2d 57 (N.D.N.Y. 2006).................................................................. 16

STATUTES

18 U.S.C. § 371 ............................................................................................................2

## PRELIMINARY STATEMENT

John Marshall respectfully asks the Court to vacate his 2008 conspiracy conviction, which was predicated on Mr. Marshall's purported act of conspiring to commit securities fraud by engaging in insider trading.  As explained below, as a matter of law, Mr. Marshall did not commit that crime.  Although he pled guilty to being *the tipper* of confidential information (about a security that the tippee used to generate trading profits), there is no basis, either within Mr. Marshall's plea allocution *or elsewhere*, for the conclusion that Mr. Marshall either: (a) received or agreed to receive a benefit in exchange for the tip; or (b) had a relationship with the tippee that was sufficiently close, under the standard set forth in *Dirks v. Securities and Exchange Commission* and *Salman v. U.S.*, to make the tippee's trading profit a benefit to Mr. Marshall.  Mr. Marshall's lawyer rendered constitutionally defective representation by failing to raise this point in connection with plea discussions, the acceptance of the plea agreement or otherwise during counsel's representation of Mr. Marshall.  Moreover, Mr. Marshall's allocution was insufficient because Mr. Marshall made no admissions necessary to establish his receipt or expected receipt of a benefit, which was required for him to be liable as a tipper under the insider trading laws.

Although the writ of error *coram nobis* is an exceptional remedy, Mr. Marshall's case satisfies its strict requirements.  *See Foont v. U.S.*, 93 F.3d 76, 78-

1

79 (2d Cir. 1996) (describing the three prong test for a grant of the writ). First, because Mr. Marshall was innocent of the charge to which his lawyer had him plead guilty, the circumstances compel the granting of the writ to achieve justice. Second, Mr. Marshall had sound reasons for failing to seek this relief earlier.  In brief, his lawyer did not identify the deficiency in the government's case for him, and Mr. Marshall, a layman, did not recognize those flaws himself, until he read about the Second Circuit's *Newman* decision and the Supreme Court's decision in *Salman*.  Finally, as is also detailed below, Mr. Marshall continues to suffer from various legal consequences of his conviction that would be remedied by a granting of the writ.

## STATEMENT OF FACTS

On September 25, 2008, John Marshall pled guilty to one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371.  In his allocution, Mr. Marshall acknowledged that he gave material non-public information to Alan Tucker concerning International Securities Exchange ("ISE"), a publicly traded company.  Specifically, Mr. Marshall told Mr. Tucker about negotiations by potential suitors to acquire ISE.  *See* Declaration of Alan S. Lewis, dated April 14, 2017 ("Lewis Decl."), Ex. A at 20.  Mr. Marshall had been the vice chairman of ISE – a securities exchange that facilitated the purchase and sale of put and call options.  Lewis Decl., Ex. B at ¶7.

Consistent with the information that Mr. Marshall shared with Mr. Tucker, on April 30, 2007, Euréx Frankfurt AG, a derivative exchange jointly operated by Deutsche Borse AG and SWX Swiss Exchange, announced an agreement to acquire the outstanding stock of ISE. Lewis Decl., Ex. B at ¶8, 9. Mr. Tucker made securities trades based on that information, netting him personal profits of more than $1,000,000. *See* Lewis Decl., Ex. C at 2.

Mr. Tucker did not share any of the profits that he made by trading in the securities of ISE with Mr. Marshall, directly or indirectly, nor did the two of them have any agreement or understanding to share those profits. Neither the plea agreement, the plea proceeding itself, nor any other part of the record reveals any such sharing of profits or agreement to share them. *See generally* Lewis Decl., Exs. A, B, & C.

To the contrary, the transcript of the plea proceeding suggests that Mr. Tucker did not even tell Mr. Marshall the amount of his trading profits – or that he had generated them at all. Indeed, Mr. Marshall did not learn that Mr. Tucker had even invested in ISE securities until "long after the fact," Lewis Decl., Ex. A at 25, *i.e.*, after both of them were criminally charged. *See also id.*, Ex. A at 20.

The description by Mr. Marshall's lawyer of the agreement between Mr. Marshall and Mr. Tucker reinforces the point that the agreement did *not* include the sharing of profits. As Mr. Marshall's counsel described the agreement:

3

> [Mr. Marshall] did have an agreement or understanding
> with this colleague [i.e., Mr. Tucker] that Mr. Marshall
> would provide him with information about these
> negotiations about ISE, understanding, Mr. Marshall
> understood at the time that this colleague was going to be
> trading on possession of this information.  Lewis Decl.,
> Ex. A at 23.

In short, the "understanding" was limited to providing information about ISE, but did not include an agreement under which Mr. Marshall would share in whatever trading profits Mr. Tucker might generate from his trades in the securities of ISE. The government never asked any questions about the extent of the agreement between Mr. Marshall and Mr. Tucker, as described by Mr. Marshall's lawyer, nor did the government elaborate on that subject, ever.

The Complaint reinforces the point that Mr. Tucker and Mr. Marshall never shared the profits of the trades in ISE nor had any understanding under which Mr. Marshall would benefit financially as a result of Mr. Tucker's trades in ISE. None of the acts that the Complaint alleges as in furtherance of the conspiracy (count 1), and none of the transactions described in counts 2 through 11 (the substantive securities fraud counts) include either the transfer of anything of value to Mr. Marshall or an agreement to make such a transfer. *See generally* Lewis Decl., Ex. B.

Mr. Marshall was sentenced to 18 months' incarceration, three years of supervised release (12 months of which included home confinement) and 300

4

hours of community service, all of which he has completed. Declaration of John Marshall, dated April 14, 2017 ("Marshall Decl.") at ¶2. Nevertheless, as described below, he continues to suffer from the consequences of his conviction.

## **ARGUMENT**

A district court may issue a writ of *coram nobis* where "extraordinary circumstances are present." *Foont*, 93 F.3d at 76, 78 (citing *Nicks v. U.S.*, 955 F.2d 161, 167 (2d Cir. 1992)). "A petitioner seeking such relief must demonstrate that (1) there are circumstances compelling such action to achieve justice, (2) sound reasons exist for failure to seek appropriate earlier relief, and (3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Foont*, 93 F.3d at 79 (internal quotations and citations omitted). Here, compelling circumstances are present based on Mr. Marshall's actual innocence of the crime to which he pled guilty, as well as his lawyer's ineffectiveness in failing to advise Mr. Marshall of the essential elements of the crime. Moreover, that ineffectiveness was directly related to Mr. Marshall's failure to seek relief from his conviction earlier. As described below and in Mr. Marshall's Declaration, he continues to suffer direct consequences of his criminal conviction that can only be remedied by a granting of the writ.

**A.** **Mr. Marshall Is Actually Innocent of the Crime to Which He Pled Guilty. His Lawyer Rendered Ineffective Assistance in Failing to Identify and Raise the Fatal Flaw in the Government's Case – the Lack of Any Basis for Concluding that Mr. Marshall Received or Understood that He Would Receive a Benefit in Connection with His Tip.**

Mr. Marshall was actually innocent – that is to say, factually innocent – of the crime to which he pled guilty. He was innocent of insider trading, or of a conspiracy to commit that offense, because he never received or expected to receive any benefit of any kind in exchange for the informational tip he gave to Alan Tucker – that ISE might be the subject of a tender offer. The conclusion that Mr. Marshall is factually innocent is based on the undisputed facts alleged in the Complaint, recited in Mr. Marshall's plea agreement, and, most importantly, on the words spoken by Mr. Marshall when he pled guilty. Mr. Marshall's innocence – as well as his lawyer's failure to recognize that an essential element of the charged crime was lacking – supports vacatur of Mr. Marshall's conviction.

In *Dirks v. SEC*, 463 U.S. 646, 663 (1983), the Supreme Court explained that an insider is liable for securities fraud based on insider trading only if the insider understands that he will receive "a direct or indirect *personal* benefit from the disclosure, such as a pecuniary gain or a reputational benefit that will translate into future earnings." As the Court held:

> [T]he test is whether the insider personally will benefit, directly or indirectly, from his disclosure. *Absent some personal gain, there has been no breach of duty to stockholders. Id.* at 662 (emphasis added).

6

A personal benefit can be inferred where "a relationship between the [tipper] and the recipient . . . suggests a *quid pro quo* from the latter, or an intention to benefit the particular recipient," *Dirks*, 463 U.S. at 664, or where a tipper makes a gift of "inside information to 'a trading relative or friend.'" *Salman v. U.S.*, 137 S. Ct. 420, 428 (quoting *Dirks*, 463 U.S. at 664).

In *U.S. v. Newman*, 773 F.3d 438 (2d Cir. 2014), the Second Circuit held that when the government relies on the relationship between the tipper and the tippee to establish a "personal gain," it must prove that there is a "a *meaningfully close personal relationship* that generates an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature." *Id.* at 452 (emphasis added). While the Supreme Court's holding in *Salman* modified an aspect of *Newman*, that modification concerned only whether the government must prove that the tipper received "at least a potential gain of a pecuniary or similarly valuable nature" when the tipper and tippee "share[] a close family relationship." *See Salman*, 137 S. Ct. at 424. That narrow question is the only one resolved in *Salman*, which concluded that the government need not prove a pecuniary benefit when the tipper and tippee share a close relationship of the type specifically addressed in *Dirks*. *See Salman*, 137 S. Ct. at 427-28. The Court did not discuss, much less overrule, *Newman*'s holding that if the government relies on the relationship between the tipper and the tippee

7

to establish a personal benefit, it must prove that the two had "a meaningfully close personal relationship." *Newman*, 773 F.3d at 452.

It is beyond dispute that Mr. Marshall received no monetary benefit as a result of Mr. Tucker's trades or from providing information to Mr. Tucker.  Mr. Marshall never admitted to the receipt of such a benefit and the government never alleged that he had.  *See generally* Lewis Decl., Exs. A, B, and C.  Neither during the allocution nor at any time did the government contend that Mr. Marshall expected, or agreed to receive anything of value in exchange for the information he provided to Mr. Tucker.  *Id.*  Evidently, Mr. Marshall did not even learn that Mr. Tucker had invested in the securities of ISE, much less that he had profited, until after both of them were criminally charged.  Lewis Decl., Ex. A at 25.

In order for insider trading liability to attach in the absence of a tangible benefit, *Dirks, Newman* and *Salman* require a meaningfully close personal relationship between tipper and tippee.   There simply is no statement, or even suggestion, in the complaint, plea agreement or plea allocution that Mr. Marshall and Mr. Tucker had a "meaningfully close personal relationship."  To be sure, they were business colleagues, but no court has ever held that the fact of a pure business relationship is enough to substitute for the tangible benefit requirement that insider trading liability ordinarily requires.  That Mr. Marshall and Mr. Tucker were colleagues does not satisfy *Newman*, *Dirks,* or *Salman*.

The absence of any fact that could satisfy the "benefit" element – a pecuniary benefit or a relationship sufficiently close between tipper and tippee – not only makes Mr. Marshall actually innocent – but his lawyer's failure to recognize Mr. Marshall's innocence deprived Mr. Marshall of the effective assistance of counsel.  "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process.  Thus, ineffective assistance of counsel is one ground for granting a writ of coram nobis." *Kovacs v. U.S.*, 744 F.3d 44, 49 (2d Cir. 2014).  To establish that counsel's performance was constitutionally defective the petitioner must show that: "(1) defense counsel's performance was objectively unreasonable; and (2) the deficient performance prejudiced the defense." *Id*. (citing *Strickland v. Washington*, 466 U.S. 668, 687-8₺ (1984)).

In order for a plea to be made intelligently, a defendant must be apprised of "the essential nature of the charge against him" prior to pleading guilty to that charge. *Bousley v. U.S.*, 523 U.S. 614, 619 (1998) (citations omitted).  A  lawyer provides ineffective assistance if he fails to advise his client that an essential element of the crime cannot be proved.  *See, e.g., U.S. v. Weeks*, 653 F.3d 1188, 1201 (10th Cir. 2011) (Stating "an individual may bring an ineffective assistance of counsel claim based on the argument that he lacked notice of the elements of the crime" and finding ineffective assistance where counsel failed to explain "critical

element" of crime of conspiracy to violate securities laws.); *Hawkman v. Parratt*, 661 F.2d 1161, 1170 (8th Cir. 1981) (Affirming grant of writ of *habeas corpus* based on ineffective assistance of counsel where "record [was] unclear as to whether the petitioner's attorney ever discussed with petitioner the elements of each of the crimes charged and the proof required of the state to convict petitioner of each of the charges."). If "neither [the defendant], nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged," a defendant's plea "would be . . . constitutionally invalid." *Bousley*, 523 U.S. at 618–19. It is evident from the transcript of the plea allocution that neither Mr. Marshall nor his lawyer understood that the government was required to show a benefit accruing to Mr. Marshall – either an understanding to share a pecuniary benefit or one arising from a "meaningfully close personal relationship" between tipper and tippee. Nowhere does Mr. Marshall's recitation of the facts reference any benefit received from or any meaningfully close personal relationship with Mr. Tucker:

> I was on the board of directors of the [ISE] . . . from the initial launch of the exchange in May of 2000 until March of 2008. In late 2006 and early 2007, the ISE entered into merger discussions with a number of other exchanges. I gave hints about those merger discussions to a colleague with the knowledge that he would likely trade on that information and I know in fact that he did trade on that information. The merger discussions eventually led to a merger agreement which was announced on April 30, 2007. Lewis Decl., Ex. A at 20.

The government requested clarification, which Mr. Marshall's lawyer provided, but that clarification did not establish that Mr. Marshall received any benefit or had a sufficiently close relationship with Mr. Tucker:

> Mr. McGorty [the prosecutor] raised with me a question of whether it was clear on the record that Mr. Marshall entered into an agreement or understanding with this colleague – and I can tell your Honor that I have conferred with Mr. Marshall. He did have an agreement or understanding with this colleague that Mr. Marshall would provide him with information about these negotiations about ISE, understanding . . . that this colleague was going to be trading on possession of this information. That's what I think Mr. McGorty wanted clarified on the record and if you want Mr. Marshall to confirm that that's the case, he will do so. Lewis Decl., Ex. A at 23.

In responding to the Court's questions about his "understanding" with Mr. Tucker, Mr. Marshall did not supply any basis for concluding that his business relationship with Mr. Tucker was also a meaningfully close *personal* relationship:

> The Court:  And were you aware that [Mr. Tucker] was investing in securities of ISE?
>
> Mr. Marshall:  I was certainly aware that he intended to. Details, I didn't know, until long after the fact.
>
> The Court:  All right.  I think that's sufficient.
>
> Lewis Decl., Ex. A at 25.

But it is not sufficient.  Mr. Marshall's lawyer evidently failed to appreciate the absence of this essential element of the crime, and erred by advising Mr.

11

Marshall to plead guilty, even though there was no basis for a finding that Mr.

Marshall had received or expected to receive any benefit for his tip.

Counsel's error in failing to identify the key defect in the government's case

undeniably prejudiced Mr. Marshall.  Prejudice is established when "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Kovacs*, 744 F.3d at 51

(citing *Strickland*, 466 U.S. at 694).  In *Hill v. Lockhart,* 474 U.S. 52, 59 (1985),

the Supreme Court stated that prejudice is shown when "there is a reasonable

probability that, but for the counsel's errors, he would not have pleaded guilty and

would have insisted on going to trial."

In sum, the failure of Mr. Marshall's lawyer to advise him of the benefit

requirement of insider trading liability rendered the representation deficient in a

manner that prejudiced Mr. Marshall.  As described above, nowhere in the Plea

Transcript or the Complaint is there any mention of a *quid pro quo* or other benefit

received by Mr. Marshall, or of a "meaningfully close personal relationship"

between Mr. Marshall and Mr. Tucker.  A criminal defense lawyer's "failure to

advance a purely legal and clearly meritorious argument in the absence of any

strategic reason not to is representation that *per se* falls below an objective

standard of reasonableness," at least when "it would not have required exceptional

12

measures for a defense lawyer to become familiar with the pertinent statutes and case law." *Somerville v. Conway*, 281 F. Supp. 2d 515, 523 (E.D.N.Y. 2003). The benefit requirement was well established, as a component of insider trading liability, and there was no conceivable strategic reason for Mr. Marshall's lawyer not to raise the benefit requirement as a defense. His failure to do so clearly caused Mr. Marshall to suffer prejudice. He pled guilty to a crime of which he was factually innocent, based on his lawyer's incomplete advice.

**B.    Sound Reasons Exist for the Period of Time that Elapsed Between Mr. Marshall's Conviction and the Filing of this Action.**

"No statute of limitations governs the filing of a coram nobis petition." *Kovacs*, 744 at 54 (citing *Foont*, 93 F.3d at 79). In determining whether "sound reasons" exist for any delay, "The critical inquiry . . . is whether the petitioner is able to show justifiable reasons for the delay." *Foont*, 93 F.3d at 80; *see also Kovacs*, 744 F.3d at 54 (finding that petitioner acted diligently and did not obtain a tactical advantage from the delay). Here, the reasons for Mr. Marshall's delay are entirely reasonable and justifiable.

As an initial matter, Mr. Marshall, a lay person with no legal training, predictably and understandably relied on his lawyer to identify the legal issues relevant to the charges and any weaknesses in the Government's proof. Marshall Decl., ¶3. As explained above, Mr. Marshall's lawyer appears not to have appreciated the absence of one of the essential elements of tipper liability, and

13

consequently failed to advise Mr. Marshall about that fatal weakness in the charge against him.  Reliance on the erroneous advice of counsel justifies a delay in filing a petition for a writ of *coram nobis*.  *Gushlak v. U.S.*, 16-cv-2713 (NGG) (JO), 2017 WL 888301, at *3 (E.D.N.Y. Mar. 6, 2017); *see also Kovacs*, 744 F.3d at 54 ("[I]t is improbable that Kovacs (or whatever attorney he consulted) would have promptly thought about coram nobis, which is as arcane as it is ancient.").

In 2015, as a result of the Second Circuit's decision in *Newman*, Mr. Marshall became aware of the legal rule that a tipper must either receive or expect to receive a benefit (or have a sufficiently close relationship with the tippee) to be subjected to liability for insider trading.[1]  Marshall Decl., ¶4.  But a very short time afterwards, Mr. Marshall became aware of the Supreme Court's January 19, 2016 decision to grant of certiorari in *U.S. v. Salman* on the following issue:

> Does the personal benefit to the insider that is necessary to establish insider trading under *Dirks v. SEC*, 463 U.S. 646 (1983), require proof of "an exchange that is objective, consequential, and represents at least a potential gain of a pecuniary or similarly valuable nature," as the Second Circuit held in *United States v. Newman*, 773 F.3d 438 (2d Cir. 2014), *cert. denied*, No. 15-137 (U.S. Oct. 5, 2015), or is it enough that the insider and the tippee shared a close family relationship, as the Ninth Circuit held in this case?  *See* 136 S.Ct. 899

---

[1] While *Newman* did not change the law of *Dirks*, it is understandable that Mr. Marshall did not appreciate the absence of an essential element of the crime to which he pled guilty, because Mr. Marshall relied on prior counsel to inform him of all possible, reasonable defenses to the crimes alleged in the indictment.

14

(2016) *and* Petition for Writ of Certiorari at *i, *Salman*,
137 S. Ct. 420.

It was certainly "sound" for Mr. Marshall to wait to file his potential claim,

until after decision by the Supreme Court in *Salman*, given that the Court's

decision in that case could have been dispositive – favorably or unfavorably – of

Mr. Marshall's claim.  Mr. Marshall filed this petition promptly – barely four

months after the Supreme Court's December 6, 2016 decision in Salman,

reinforcing the conclusion that Mr. Marshall did not unreasonably delay its filing.

In sum, Mr. Marshall has proceeded diligently since the Supreme Court's decision

in *Salman* and has neither sought nor gained any unfair tactical advantage as a

result of the timing of this filing.  *See Kovacs*, 744 F.3d at 54.

## C.   Mr. Marshall's Erroneous Conviction Continues to Cause Him Harm.

Mr. Marshall has completed serving his sentence of 18 months'

incarceration, three years of supervised release (12 months of which included

home confinement) and 300 hours of community service, but, as elaborated in Mr.

Marshall's Declaration, his insider trading conviction continues to cause him to

suffer harm.  He has been unable to obtain gainful employment in either of his

professions (academia or as a financial consultant).  Financial institutions regularly

and suddenly tell him that he can no longer maintain bank accounts, credit cards

and brokerage accounts.  This problem has not dissipated with time.  For example,

last year, a national banking institution suddenly cancelled his credit cards, even

though he has a near perfect credit score.  More recently, a brokerage suddenly required him to close brokerage accounts that had been open for fifteen years – well before his indictment.  Mr. Marshall lives in Florida, where he desires to maintain a firearm in his home, but he is prohibited from doing so because of his conviction.  Such harms satisfy the continuing consequences element of a claim for *coram nobis* relief, as set forth in the third prong of *Foont.  See, e.g., Weichert v. U.S.*, 458 F. Supp.2d 57, 63 (N.D.N.Y. 2006) (Petitioner established continuing legal consequences where his challenged conviction resulted in his disbarment and prevented him from seeking reinstatement to New York State bar, and prevented him from legally possessing firearms.).  Moreover, Florida also permanently prohibits Mr. Marshall from voting, even though, as mentioned above, he long ago completed serving his sentence.  That fact alone is also sufficient for Mr. Marshall to demonstrate that he continues to suffer from the legal consequences of his conviction.  *Id.*  ("The Second Circuit has held that a petitioner may satisfy the continuing harm requirement applicable to coram nobis applications where he establishes that the challenged conviction deprives him of his right to vote.") (citing *Fleming v. U.S.*, 146 F.3d 88, 90 (2d Cir. 1998)).

It is unjust that Mr. Marshall be required to continue to suffer the consequences of his insider trading conviction, given the undeniable conclusion, as

16

explained above, that he actually was not guilty of that charge – because he never

benefited or expected to benefit financially from the information he shared.

## **CONCLUSION**

For the foregoing reasons, John Marshall respectfully asks the Court to grant

his petition for a writ of error *coram nobis* and for such further relief as is just and

proper.

Dated:  New York, New York
       April 24, 2017

                         CARTER LEDYARD & MILBURN LLP

By:   _____

          Alan Lewis
          2 Wall Street
          New York, NY  10005
          Tel.:   212-238-8647
          Email:  lewis@clm.com

          *Attorneys for Petitioner*
          *John Marshall*