UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUN 2 0 2018

John Marshall,

    Petitioner,

—v—

United States of America,

    Respondent.

17-cv-2951 (AJN)

MEMORANDUM OPINON AND ORDER

ALISON J. NATHAN, District Judge:

Petitioner John Marshall seeks a writ of error coram nobis to vacate his conviction of conspiracy to commit securities fraud based on his alleged actual innocence and the alleged ineffective assistance of his defense counsel. For the reasons discussed below, the petition for a writ of error coram nobis is denied.

I.    **BACKGROUND**

Petitioner and Alan Tucker began working together at Petitioner's financial consulting firm in approximately 1995, and they renamed the firm Marshall, Tucker & Associates, LLC. Dkt. No. 31 (Pet. Dec.) ¶¶ 21-22. Tucker went to the wedding of Petitioner's daughter, and they went to the funerals of each other's fathers. *Id.* ¶ 28.

In addition to working at his firm, from May of 2000 until March of 2008, Petitioner served as a member of the Board of Directors of the International Securities Exchange ("ISE"). Dkt. No. 4, Ex. A (Plea Tr.) at 20:2-5. From late 2006 through early 2007, the ISE engaged in merger discussions with several other exchanges. *Id.* at 20:5-7. In his role on the ISE Board of Directors, Petitioner learned material, non-public information relating to discussions about that potential merger. Dkt. No. 22, Ex. 3 (Info) ¶¶ 3, 7.

1

From late 2006 through April 2007, Petitioner provided Tucker with that material, non-public information. *Id.* ¶ 7. Petitioner instructed Tucker "to make certain trades from which they would share the profits." *Id.* Tucker performed those transactions, and when the merger was made public around April 30, 2007, Petitioner and Tucker "made a significant profit." *Id.*

On March 13, 2008, the Government filed a complaint charging Petitioner, Tucker, and a third defendant with one count of conspiracy to commit securities fraud and ten counts of securities fraud. *See* Dkt. No. 4, Ex. B. On September 25, 2008, the Government filed an Information charging Petitioner with one count of conspiracy to commit securities fraud, in violation of 18 U.S.C. § 371, and Petitioner pleaded guilty to that count the same day. *See* Info; Plea Tr.

As part of his guilty plea allocution, Petitioner stated, "In late 2006 and early 2007, the ISE entered into merger discussions with a number of other exchanges. I gave hints about those merger discussions to a colleague with the knowledge that he would likely trade on that information and I know in fact that he did trade on that information." Plea Tr. at 20:5-10. Defense counsel explained that Petitioner had "an agreement or understanding" with Tucker that Petitioner "would provide him with information about the[] negotiations about ISE," and that Petitioner "understood at the time that [Tucker] was going to be trading on possession of this information." *Id.* at 23:16-23. In response to defense counsel's statement, Petitioner responded, "[W]hat [defense counsel] just said is correct." *Id.* at 24:4-5. Petitioner also explained,

> I spoke to [Tucker] on many, many, many, many occasions. He happens to be a partner in my firm. Our names are both on the firm. I spoke to him many, many, many times, usually about things that had to do with just routine company business. But there were times that I said things that in essence confirmed speculation in the newspapers, and later, towards the end, did provide very specific information.

Plea Tr. at 24:19-25:1. When the Court asked whether Petitioner was aware that Tucker was

2

investing in securities of ISE, Petitioner answered that he "was certainly aware that [Tucker] intended to." Plea Tr. at 25:2-5.

On December 15, 2008, the Court sentenced Petitioner to eighteen months' imprisonment, three years of supervised release, and 300 hours of community service, all of which Petitioner has completed. Dkt. No. 5 (First Pet. Dec.) ¶ 2.

On April 24, 2017, Petitioner filed the instant Petition. *See* Dkt. No. 1 (Pet.).

## II. DISCUSSION

A writ of error coram nobis should issue "only where extraordinary circumstances are present." *See Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992). A petitioner seeking a writ of error coram nobis "must demonstrate that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." *Foont v. United States*, 93 F.3d 76, 79 (2d Cir. 1996) (internal citations and quotation marks omitted).

### A. Compelling Circumstances

Petitioner contends that here compelling circumstances exist that justify the issuance of a writ of error coram nobis because he is actually innocent of the crime to which he pled guilty and because his lawyer was ineffective in failing to advise Petitioner of the essential elements of that crime. *See* Pet. at 5.

#### 1. Actual Innocence

Petitioner contends that he was innocent of insider trading, or of a conspiracy to commit that offense, because "he never received or expected to receive any benefit of any kind in exchange for the informational tip he gave to Alan Tucker." Pet. at 6.

3

The Supreme Court recently clarified the personal benefit requirement for tipper liability in *Salman v. United States*, 137 S. Ct. 420 (2016). There, the Supreme Court explained, "[A] tippee is exposed to liability for trading on inside information only if the tippee participates in a breach of the tipper's fiduciary duty," i.e. if the tipper "'will benefit, directly or indirectly, from his disclosure,' . . . 'such as [through] pecuniary gain or . . . reputational benefit that will translate into future earnings.'" *Id.* at 427 (quoting *Dirks v. SEC*, 463 U.S. 646, 662, 663 (1983)). In other words, "the disclosure of confidential information without personal benefit is not enough." *Id.* However, to be liable for trading on insider information a tipper need not receive "something of a 'pecuniary or similarly valuable nature' in exchange for a gift to family or friends." *Id.* at 428 (quoting *United States v. Newman*, 773 F.3d 438, 452 (2d Cir. 2014)). Instead, "when a tipper gives inside information to a trading relative or friend, the jury can infer that the tipper meant to provide the equivalent of a cash gift." *Id.* "In such situations, the tipper benefits personally because giving a gift of trading information is the same thing as trading by the tipper followed by a gift of the proceeds." *Id.*

Petitioner contends that there is no basis in his plea allocution or elsewhere for the conclusion that he "(a) received or agreed to receive a benefit in exchange for the tip; or (b) had a relationship with [Tucker] that was sufficiently close . . . to make [Tucker's] trading profit a benefit to Mr. Marshall." Pet. at 1. Petitioner insists that there is no evidence that Petitioner received a "tangible benefit" after sharing information with Tucker, so insider trading liability can attach only if there was "a meaningfully close personal relationship" between Petitioner and Tucker. Pet. at 8. Petitioner avers that there is no evidence such a relationship existed. *See id.*

However, in *United States v. Martoma*, 869 F.3d 58 (2d Cir. 2017), the Second Circuit "reject[ed], in light of *Salman*, the categorical rule that an insider can *never* personally benefit

4

from disclosing inside information as a gift without a 'meaningfully close personal relationship.'" *Id.* at 71 (emphasis in original). The Second Circuit held that "an insider or tipper personally benefits from a disclosure of inside information whenever the information was disclosed 'with the expectation that [the recipient] would trade on it,' and the disclosure 'resemble[s] trading by the insider followed by a gift of the profits to the recipient,' whether or not there was a 'meaningfully close personal relationship' between the tipper and tippee." *Id.* at 70 (alterations in original) (internal citations omitted) (quoting *Salman*, 137 S. Ct. at 428, 427). The Second Circuit explained that "a corporate insider personally benefits whenever he 'disclos[es] inside information as a gift . . . with the expectation that [the recipient] would trade' on the basis of such information or otherwise exploit it for his pecuniary gain." *Id.* at 69 (alterations in original) (quoting *Salman*, 137 S. Ct. at 428). The Second Circuit clarified that not all disclosures of inside information satisfy the personal benefit requirement: "[O]ur holding reaches only the insider who discloses inside information to someone *he expects will trade on the information.*" *Id.* at 71 (emphasis in original).

Here, Petitioner clearly stated during his guilty plea allocution that he provided information to Tucker with the expectation that Tucker would trade on that information. *See* Plea Tr. at 20:7-10 ("I gave hints about those merger discussions to a colleague with the knowledge that he would likely trade on that information and I know in fact that he did trade on that information."); *id.* at 23:16-24:5 (Petitioner describing as correct defense counsel's assertion that Petitioner had an agreement with Tucker to provide Tucker information about the potential ISE merger, information which Petitioner understood that Tucker would trade on); *id.* at 25:2-5 (Petitioner stating that he was aware that Tucker intended to invest in ISE securities). In addition, Petitioner described Tucker as a "colleague" in his allocution, *see, e.g., id.* at 20:8, thus

indicating that he and Tucker had some type of relationship, *see also id.* at 24:19-23 (Petitioner stating that Tucker was a partner at his firm and that Petitioner spoke with Tucker "on many, many, many, many occasions"). In fact, Petitioner and Tucker had known each other and worked together for at least a decade before the events at issue occurred. *See* Pet. Dec. ¶¶ 21-22, 28; *see also* Info ¶ 5 (stating that Petitioner and Tucker were principals at the same firm). Accordingly, there is a basis in Petitioner's plea allocution and elsewhere for the conclusion that Petitioner "disclosed [inside information] with the expectation that [Tucker] would trade on it, and that the disclosure resemble[s] trading by [Petitioner] followed by a gift of the profits to the recipient." *Martoma*, 869 F.3d at 70 (internal quotation marks omitted).

Moreover, the Information to which Petitioner pled guilty states that Petitioner and Tucker agreed to share profits resulting from trades carried out pursuant to the insider trading scheme. *See* Info ¶ 7. The Information also states that as a result of the trading scheme, Marshall and Tucker "made a significant profit." *Id.* The Information thus provides a basis for a conclusion that Petitioner received or expected to receive a pecuniary benefit from providing material non-public information to Tucker.

Sufficient evidence thus supports Petitioner's conviction for conspiracy to commit securities fraud.

### 2. Ineffective Assistance of Counsel

Petitioner further argues that his lawyer's failure to advise him that an essential element of the crime—the "benefit" element—could not be proved constitutes ineffective assistance of counsel. *See* Pet. at 9. Ineffective assistance of counsel may justify a writ of error coram nobis. *See Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014). To establish ineffective assistance of counsel, a petitioner must show that "(1) defense counsel's performance was objectively

unreasonable; and (2) the deficient performance prejudiced the defense." *Id.* Because, as explained, Petitioner was not actually innocent of insider trading, or of a conspiracy to commit that offense, Petitioner's argument that his counsel was ineffective by failing to recognize Petitioner's innocence necessarily fails.

### B. Delay and Continuing Harm

Because Petitioner has not shown compelling circumstances that would warrant the issuance of a writ of error coram nobis, the Court need not decide whether Petitioner's delay in filing this petition was justified or whether Petitioner will continue to suffer harm as a result of his conviction.

## III. CONCLUSION

For the foregoing reasons, the petition for a writ of error coram nobis is denied. The Clerk of the Court is directed to close the case and enter judgment.

SO ORDERED.

Dated: June 26, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge