UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: MAR 1 2 2019

John Marshall,

    Petitioner,

 —v—

United States of America,

    Respondent.

17-cv-2951 (AJN)

OPINON & ORDER

ALISON J. NATHAN, District Judge:

  Petitioner John Marshall moves pursuant to Fed. R. Civ. P. 59(e) to alter and amend the Court's June 20, 2018 Memorandum Opinion and Order denying his petition for writ of error coram nobis. Dkt. No. 37. For the reasons discussed below, the motion to alter and amend the judgment is denied.

I.  BACKGROUND

  The Court assumes familiarity with the underlying facts, which were described in detail in the Court's June 20, 2017 Memorandum Opinion and Order ("Order"). Dkt. No. 37. In brief, from 2000 until 2008, Petitioner served as a member of the Board of Directors of the International Securities Exchange ("ISE"), in addition to running his financial consulting firm, Marshall, Tucker & Associates, LLC. Dkt. No. 4, Ex. A at 20: 2–5; Dkt. No. 31 ¶¶ 21–22. As an ISE board member, Petitioner learned material, non-public information related to discussions about a potential merger. Dkt. No. 22, Ex. C ¶¶ 3, 7. Petitioner provided this information to his business partner, Alan Tucker, who traded on the basis of the information and "made a significant profit." *Id.* ¶ 7. The Government filed a complaint against Petitioner, Tucker, and one other defendant on March 13, 2008. Dkt. No. 4, Ex. B. Petitioner pled guilty on September

25, 2008, to a one count Information charging him with conspiracy to commit securities fraud in violation of 18 U.S.C. § 371. Dkt. No. 4, Ex. A. In his plea allocution, Petitioner stated that he "gave hints about [the] merger discussions to a colleague with the knowledge that he would likely trade on that information." Dkt. No. 4, Ex. A at 20:5–10. Petitioner also confirmed that he had an agreement or understanding with Tucker. *Id.* at 23–24. Following his guilty plea, Petitioner was sentenced to eighteen months' imprisonment, three years of supervised release, and 300 hours of community service, which he has completed. Dkt. No. 5 ¶ 2.

On April 24, 2017, Petitioner filed a petition in this Court for a writ of error coram nobis on the grounds of actual innocence and ineffective assistance of counsel. Dkt. No. 1. Petitioner's primary argument was that he is innocent as a matter of law because "he never received or expected to receive any benefit of any kind in exchange for the informational tip he gave to Alan Tucker." Dkt. No. 1 at 5–6. In addition, the petition argues that Petitioner's trial counsel rendered constitutionally defective representation because he failed to raise the lack of an expected or actual benefit "in connection with plea discussions, the acceptance of the plea agreement or otherwise during counsel's representation of Mr. Marshall." *Id.* at 1. On June 20, 2017 the Court denied the petition for a writ of error coram nobis on the grounds that there was "sufficient evidence" to support "Petitioner's conviction for conspiracy to commit securities fraud." Dkt. No. 35 at 6. In light of this evidence, the Court rejected Petitioner's actual innocence argument, as well as the argument that Petitioner's counsel was ineffective for "failing to recognize [his] innocence." *Id.* at 7.

On July 13, 2018, Petitioner filed the instant motion to amend the judgment. *See* Dkt. No. 37. The Government filed an opposition on July 26, 2018, Dkt. No. 39, and Petitioner filed a reply on August 10, 2018, Dkt. No. 42.

## II. DISCUSSION

The standard for granting a motion to amend or alter the judgment pursuant to Fed. R. Civ. P. 59(e) in the Second Circuit is "strict, and reconsideration will generally be denied." *In re Health Management Sys. Inc. Secs. Litig.*, 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000) (quoting *Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*, 00 Civ. 2474 (AGS), 2000 WL 1279783, at *1 (S.D.N.Y. Sept. 8, 2000)). Reconsideration is appropriate where the moving party demonstrates that the Court overlooked "controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the court." *Range Road Music, Inc. v. Music Sales Corp.*, 90 F.Supp.2d 390, 392 (S.D.N.Y. 2000) (quoting *Yurman Design, Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307(JFK), 2000 WL 217480, at *1 (S.D.N.Y. Feb.22, 2000)). "Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice." *Herschaft v. New York City Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 284 (E.D.N.Y) (quoting *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F.Supp.2d 365, 368 (S.D.N.Y.1999)) (internal quotation marks omitted).

Petitioner makes two arguments in support of his motion: first, that the Court's analysis of Petitioner's actual innocence claim relied on the Second Circuit's original opinion in *United States v. Martoma*, 869 F.3d 58 (2d Cir. 2017), which has since been withdrawn and replaced; and second, that the Court failed to consider an affidavit from Petitioner's trial counsel in deciding his ineffective assistance of counsel claim. *See* Dkt. No. 38. As discussed below, neither the amended *Martoma* opinion nor the factual allegations in the affidavit might have reasonably altered the result before the court, nor has Petitioner demonstrated "the need to correct a clear error or prevent manifest injustice." *Herschaft*, 139 F. Supp. 2d at 284.

### A. The Second Circuit's Amended Opinion in *Martoma*

3

Petitioner argues that the Court's Order should be amended because it relies on "the now withdrawn *Martoma* decision" in determining that the personal benefit element was met. Dkt. No. 38 at 6–7. The Order cited the first *Martoma* opinion's statement that "a corporate insider personally benefits 'whenever he disclos[es] inside information as a gift…with the expectation that [the recipient] would trade' on the basis of such information." Dkt. No. 35 at 5 (quoting *Martoma*, 869 F.3d at 69) (alterations original). Based in part on this formulation, the Court assessed Petitioner's admission that he provided information to Tucker with the expectation that Tucker would trade on it as evidence that he received a personal benefit. *Id.* Though the Court cited the then-operative opinion, its reasoning is equally permissible under the amended *Martoma* opinion, which states that a jury can "often infer that a corporate insider receives a personal benefit…from deliberately disclosing valuable, confidential information without a corporate purpose and with the expectation that the tippee will trade on it." *United States v. Martoma*, 894 F.3d 64, 79 (2d Cir. 2017). Although the law as articulated in the amended *Martoma* opinion does not *require* a finding that the personal benefit element is met when the tipper expects the tippee will trade, an admission of that expectation is nonetheless relevant evidence.

Importantly, the Court did not rely solely on Petitioner's expectation that Tucker would trade in its determination that there was sufficient evidence to support the personal benefit element of securities fraud. The Court also noted that Petitioner described Tucker as a "colleague," stated that Tucker was a partner at his firm with whom he had spoken "on many, many, many, many, many occasions," and admitted that the two had had a business relationship for at least a decade. Dkt. No. 35 at 56. Taken together, this was sufficient evidence of "a relationship between [Petitioner] and [Tucker] that suggests a *quid pro quo* from the latter, or an

intention to benefit the latter." *Martoma*, 894 F.3d at 77 (quoting *United States v. Newman*, 773 F.3d 438, 452 (2d Cir. 2014)). Petitioner argues that the facts in the record "would not foreclose the possibility of a properly instructed jury acquitting Mr. Marshall." Dkt. No. 38 at 7–8. But to establish actual innocence in a collateral attack, a petitioner must show more than a mere possibility of acquittal. *See Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004) ("In order to establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.") (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Moreover, in the context of a guilty plea, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. *Martoma* is therefore unavailing because the controlling amended opinion does not "alter[]the result before the court." *Range Road Music, Inc.*, 90 F.Supp.2d at 392.

In addition, Petitioner contends that the Court failed to address his argument that his plea allocution was insufficient, but he points to no authority for the proposition that insufficiency of a plea allocution alone is a circumstance compelling the extraordinary relief he requests. *See* Dkt. No. 38 at 6. Indeed, courts routinely look to the totality of the record to determine whether a petitioner seeking a writ of error coram nobis has sufficiently shown actual innocence. *See Barnetson v. United States*, No. 12 CR 157 (KMW), 2016 WL 3023156, at *3 (S.D.N.Y. May 6, 2016) ("The record on collateral review is not limited to the Petitioner's allocution, but includes materials such as the Information, the plea agreement, and the Presentence Report."). As discussed above, the amendments in *Martoma* do not alter the Court's conclusion that there is sufficient evidence in the record to support Petitioner's conviction.

### B. Ineffective Assistance of Counsel

Petitioner also argues that the Court erred in its ineffective assistance of counsel analysis

by overlooking his trial counsel's affidavit, in which Mr. Iason, his former lawyer, admits that he does "not think it is likely that [he] would have discussed [the] legal issue" of the personal benefit element with his client. Dkt. No. 20, Ex. A, at 2. The Court's June 20, 2017 Order does not specifically reference this affidavit. *See generally* Dkt. No. 35. Instead, the Order addresses Petitioner's argument as formulated in the Petition: that "his lawyer's failure to recognize Mr. Marshall's innocence deprived Mr. Marshall of the effective assistance of counsel." Dkt. No. 1, at 9. This formulation of the ineffective assistance of counsel argument necessarily fails because, as explained in the Court's Order, Petitioner fails to establish actual innocence. Dkt. No. 35 at 6–7.

To the extent that Petitioner raises a broader ineffective assistance of counsel claim, it is true that a showing of actual innocence is not required. It is well settled that the elements of an ineffective assistance of counsel claim are that "(1) defense counsel's performance was objectively unreasonable; and (2) the deficient performance prejudiced the defense." *Kovacs v. United States*, 744 F.3d 44, 49 (2d Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). The Government appears to concede in this case that Mr. Iason's representation was objectively deficient. *See* Dkt. No. 39, at 2; *see also United States v. Weeks*, 653 F.3d 1188, 1201 (10th Cir. 2011) (finding deficient representation prong met where a counsel failed to explain a "critical element" of the crime to his client). Nonetheless, Petitioner fails to satisfy the second prong of the *Strickland* test.

To satisfy the prejudice prong of an ineffective assistance of counsel claim with respect to a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013) (quoting *Hill v. Lockhart*, 474 U.S.

52, 59) (1985)). In other words, Petitioner must show that had he known about the personal benefit element of securities fraud, there is a reasonable probability that he would have rejected the plea deal. It follows that the availability of a defense that Petitioner could have pursued at trial is relevant to a showing of prejudice in the plea context. *See Dixon v. United States*, No. 14-CV-1223(JS), 2018 WL 910522, at *6 (E.D.N.Y. Feb. 14, 2018) (citing *Kovacs*, 744 F.3d at 52). Petitioner now states that he disliked Tucker personally and did not receive any tangible benefit from providing Tucker with inside information. Dkt. No. 31, at 4–13. Petitioner argues that he therefore would not have pled guilty had he known that the Government would have to prove that he received some sort of benefit. *See id.*

This Court's analysis does not end with Petitioner's assertion that he would have pursued this defense at trial. Judges should "look to contemporaneous evidence to substantiate a defendant's expressed preferences," rather than "upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded." *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). In this case, at the time of his plea, Petitioner confirmed his lawyer's statement that there was "an agreement or understanding" between himself and Tucker. *See* Dkt. No. 4, Ex. A at 23–24. In addition, Petitioner stated that he and Tucker were business partners and spoke on many occasions. *Id.* at 24. The contemporaneous evidence therefore suggests that Petitioner was prepared to acknowledge under oath, if not the existence of a quid pro quo, then at least "facts that point to a relationship between the insider and the [tippee] that suggests a quid pro quo." *Martoma*, 894 F.3d at 82 (quoting *Dirks v S.E.C.*, 463 U.S. 646, 663 (1983)); *see also Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity."). Of course, Petitioner could have presented evidence at a trial that he disliked Tucker and that he expected no tangible benefit, but this would have been weighed

against the objective evidence of the length and nature of their professional relationship, which is not in dispute. Dkt. No. 31 ¶¶ 21-22; 28.

Moreover, in foregoing the plea agreement, Petitioner would have subjected himself to potential liability on additional charges. *See Chhabra*, 720 F.3d at 408 (District courts should consider "whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty" in assessing whether a defendant would have insisted on going to trial.). The original complaint filed against Petitioner charged him with ten counts of securities fraud in addition to the one count of conspiracy to commit securities fraud to which he pled, and also contained detailed allegations in support of those charges concerning specific communications between the co-Defendants. *See* Dkt. No. 4, Ex. B. In light of his potential liability and the weaknesses of his lack of benefit defense, Petitioner has not shown a reasonable probability that he would have chosen to proceed to trial had he known about the personal benefit requirement. In other words, Petitioner has failed to demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances." *See Padilla v. Kentucky*, 559 U.S. 356, 372, (2010).

Petitioner requests that the Court conduct a fact-finding hearing if the Court is unconvinced by his *post hoc* affidavits, citing *United States v. Chan*, 2018 U.S. App. LEXIS 9765 (9th Cir. Apr. 18, 2018) (unpublished opinion) (remanding a coram nobis petition to the district court to hold an evidentiary hearing). Even if *Chan* were binding authority on this Court, it is factually distinct from the case at issue here. The petitioner in *Chan* submitted an affidavit in support of her coram nobis petition attesting that she would not have pled guilty had she known about the immigration consequences of her conviction. *Id.* at *5–6. The parties agreed that the court below failed to apply the correct standard for ineffective assistance of counsel

claims, but the Government urged the Ninth Circuit to affirm the district court's denial on the independent grounds that her claim was supported only by a "self-serving declaration." *Id.* at *5. The Ninth Circuit disagreed that the declaration was the only evidence in support and concluded that the contemporaneous evidence was "inconclusive," noting that the petitioner's substantial family ties and long-term residence in the United States "tend to corroborate [her] assertion" that she would have rejected the plea deal. *Id.* at *6–7. Petitioner in this case, on the other hand, points to no corroborating contemporaneous evidence beyond a "reluctance to acknowledge the wrongfulness of his conduct" at the change of plea conference. Pet. Reply. At 8. This reluctance does not alter the Court's conclusion that, in light of evidence that he did in fact receive or anticipate a benefit, Petitioner has not shown a reasonable probability that he would have chosen to take his case to trial.

Though it appears that Petitioner was never informed of the benefit requirement for insider trading liability, his ineffective assistance of counsel argument fails at the second prong. Thus, there are no "extraordinary circumstances" here that justify the issuance of a writ of error coram nobis. *See Nicks v. United States*, 955 F.2d 161, 167 (2d Cir. 1992); *see also Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) ("[R]elief under the writ [of error coram nobis] is strictly limited to those cases in which errors ... of the most fundamental character have rendered the proceeding itself irregular and invalid."). Accordingly, even assuming arguendo that the Court "overlooked" Mr. Iason's affidavit, it contained no factual matters that "might have reasonably altered the result before the court." *Range Road Music, Inc.*, 90 F.Supp.2d at 392. Nor has Petitioner shown that the Court's order must be amended "to correct a clear error of law or prevent manifest injustice." *Munafo v. Metroplitan Transp. Authority*, 381 F.3d 99, 105 (2d Cir. 2004). Petitioner's motion to amend the judgment is therefore denied.

## III. CONCLUSION

For the foregoing reasons, Petitioner's Rule 59(e) motion is denied. This resolves Dkt. No. 37.

SO ORDERED.

Dated: March ___, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge